**HAUSHERR**

v.

**KANSAS CITY PUBLIC SERVICE CO.**

No. 21934.

Kansas City Court of Appeals.

Missouri.

May 3, 1954.

Roscoe C. Van Valkenburgh, Bernard L. Balkin, Kansas City (Brenner, Van Valkenburgh & Wimmell, Kansas City, of counsel), for appellant.

Charles L. Carr and Frank J. Rogers, Kansas City, for respondent.

CAVE, Presiding Judge.

This is an action by a husband for the loss of companionship, society and services of his wife, and for damages to his automobile, by reason of the alleged negligence of the defendant in the operation of one of its streetcars, causing it to collide with plaintiff's automobile which was being driven by his wife. A jury trial resulted in a verdict and judgment for plaintiff for $1712.50. Defendant's motion for new trial was sustained because of asserted error in the giving of plaintiff's Instruction No. 1, and plaintiff appealed.

The petition alleged that on November 12, 1948, plaintiff's wife was driving his automobile east on 59th Street between Brookside Boulevard and Main Street in Kansas City, and that when said automobile was crossing defendant's north bound streetcar tracks it was struck by one of defendant's north bound streetcars, causing injury to his wife and damage to his automobile. Several grounds of negligence were alleged, but the cause was submitted on the ground that defendant carelessly and negligently operated its streetcar at an excessive, reckless and dangerous rate of speed under the circumstances then and there existing. Defendant's answer was, in effect, a general denial coupled with a plea of contributory negligence on the part of plaintiff's wife.

The only evidence presented was that of plaintiff's witnesses. Defendant offered none.

The evidence discloses that Brookside Boulevard and Main Street are north and south streets in Kansas City, and at the point of collision and between those two streets, but not on either, the defendant has double car tracks running in a generally north and south direction; that 59th Street is an east and west street and intersects with Brookside Boulevard and Main Streets and defendant's car tracks; that there was a stationary stop sign located 6 feet west of the west rail of defendant's south bound tracks and on the south side of 59th Street, and a "slow" sign for streetcars hanging over the north bound car tracks a short distance south of 59th Street. Mrs. Hausherr was thoroughly familiar with this crossing, as she had driven over it frequently during the past 10 years. About 4:00 p.m. on the day of the collision, she was driving her husband's car east on 59th Street; that she stopped at the stop sign just west of the tracks and shifted into low gear and looked north and south for approaching streetcars; that she saw a north bound streetcar "three or four houses south of Morningside Drive"; that Morningside Drive is 200 feet south of the point of collision at 59th Street and that visibility of the car tracks extends another 150 feet further south; that after observing the streecar approaching from a point three or four houses south of Morningside Drive, she started forward across the tracks in low gear and travelling at a slow speed. She did not estimate the speed of the streetcar or of her automobile and did not ob-

serve the streetcar again until immediately before the collision; that she was watching traffic at the intersection of 59th and Main Streets, which is only 37 feet east of the east car track; that the streetcar struck her automobile at the right front fender and front door and pushed it sideways down the car tracks for a distance of about 80 feet; that the streetcar came to a stop with the front end 113 feet north of the point of collision. The distance from the stop sign to the west rail of the north bound tracks was 23 feet and the distance between the rails of the north bound tracks is 5 feet. Other pertinent testimony will be referred to in disposing of the questions presented. There is no contention in the briefs concerning the amount of the verdict or that Mrs. Hauserr received injuries and that the automobile was damaged. We need not detail such evidence.

The first question to be decided is whether or not plaintiff's Instruction No. 1 hypothesized sufficient facts to submit the issue of *negligent speed* of the streetcar. The instruction required the jury to find that plaintiff was the husband of Mary Hauserr; that on November 12, 1948, she was driving an automobile owned by plaintiff in an easterly direction on 59th Street; that she stopped said automobile at or near a traffic stop sign which was located on the south side of 59th Street approximately 6 feet west of the west rail of defendant's car tracks at the intersection; that she looked north and south along said streetcar tracks and observed defendant's streetcar approaching northward at a point south of the intersection of Morningside Drive; that said intersection was 200 feet south of the intersection of 59th Street; that thereupon, she proceeded eastward and drove onto the north bound car tracks, while in the exercise of the highest degree of care; that defendant's motorman operated the streetcar into the intersection of said tracks with 59th Street "at a high and excessive rate of speed under the circumstances then existing; and if you further find and believe that operating said streetcar at such high and excessive speed, if so, was negligence, * * *" and as a direct

and proximate result thereof the streetcar collided with plaintiff's automobile and injured his wife, then the verdict should be for the plaintiff.

The first alleged vice of this instruction is that it does not submit sufficient facts to guide the jury in determining the issue of negligent speed. In their briefs, both parties refer to substantially the same cases which have discussed this perplexing question. Such cases are: Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972; Cantwell v. Zook, Mo.Sup., 250 S.W. 2d 980; Wirth v. St. Louis County Transit Co., Mo.App., 253 S.W.2d 547; Young v. Kansas City Public Service Co., Mo.App., 255 S.W.2d 113; Calhoun v. McMahan, Mo.App., 257 S.W.2d 205. We shall add the most recent case of Hooper v. Conrad, 260 S.W.2d 496, an opinion by the Supreme Court en Banc. The opinion in the Hooper case reviews most, if not all, recent decisions discussing the question now under consideration, and announces the general rule applicable to verdict-directing instructions in negligence cases as follows, 260 S.W.2d at page 500: "Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict. In like manner, verdict-directing instructions in behalf of the defendant should recite on their face or by reference to other instructions any essential fact or facts shown or not shown which will defeat plaintiff's right of recovery. *Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions. And, we may add, that if either of the parties deems a hypothesized fact or situation not to have*

*been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction."* (Italics supplied.)

■ In the présent case, there was no divergence or conflict in the evidence as to the essential facts and circumstances which concurred to bring about the collision. A reading of the instruction discloses that it requires the jury to find a rather detailed set of facts and circumstances which, if true, would make defendant liable for the collision, and there was no evidence of a contrary set of facts which, if true, would relieve defendant of liability. Consequently, it was unnecessary for the instruction to more specifically hypothesize the facts in submitting the issue of negligent speed.

■ However, defendant contends that its answer denied all allegations of negligence and that this placed the burden of proof on plaintiff to prove his case and every element thereof, and that it was not necessary for the defendant to introduce evidence disputing or contradicting plaintiff's evidence. Of course, the burden was on the plaintiff to prove and submit every *essential element* of his case. That always has been, and still is, the law. But what we are now discussing is, how fully must an instruction detail the facts in submitting *essential elements* of negligence when there is no substantial conflict in the evidence? Defendant is confusing the question of the necessity of submitting *all essential elements* of a case to the jury with the question of the degree of *particularity* with which the plaintiff must hypothesize the basic elements of the submissible case. The Yates and Cantwell cases, supra, did not introduce a new rule of law requiring evidentiary detail to be incorporated into instructions. They merely called for more detail where controverted fact issues gave rise to two diametrically opposed versions of the occurrence, and where it was thought desirable to guide the jury by telling it what specific fact circumstances would justify its finding of the ultimate issue of negligent speed or other primary negligence.

It is our conclusion that, under the record in this case, plaintiff's Instruction No. 1 submitted sufficient evidentiary details on the issue of negligent speed. We want to make the observation that the trial court did not have the benefit of the opinion in the Hooper case at the time the motion for new trial was sustained. That opinion was handed down several months after the order was made sustaining the motion in the instant case.

The defendant seeks to justify the order sustaining the motion for new trial on other alleged errors in Instruction No. 1. We shall consider such contentions.

■ Defendant contends that Instruction No. 1 was erroneous because there was not sufficient evidence to submit the issue of excessive speed of the streetcar, and therefore the instruction was broader than the evidence. There was no direct testimony as to the speed of the streetcar. What gives us concern is whether there were sufficient facts and circumstances in the testimony from which it could be reasonably inferred that the streetcar was operated at an excessive speed under the existing circumstances. Plaintiff's wife testified that she stopped her car at the stop sign which was 6 feet west of the west rail of the south bound streetcar tracks. She was then asked:

"Q. And you saw this car (streetcar) south of Morningside, you say? A. Yes.

"Q. And then you started on? A. Yes, I did. * * *

"Q. Mrs. Hausherr, state whether or not you started immediately to cross the car tracks on 59th Street after you looked south and observed the streetcar about three or four doors south of Morningside Drive. A. Yes, I did.

"Q. Did you immediately start after that across the car tracks? A. Yes. * * *

"Q. Now, what did you do then? A. I started across the tracks * * * in low.

"Q. And approximately how fast did you say your car was going when it reached the second car tracks? A. Well, it wasn't going very fast. I had started up from a stop, I don't know just how many miles an hour, but it wasn't going fast."

The distance from the stop sign to the west rail of the north bound tracks is 23 feet, and the distance between the rails of the north bound tracks is 5 feet. The automobile was struck at about the front door post. Thus it had been driven approximately 28 feet from the stop sign. It is also in evidence that at the time Mrs. Hausherr started from the stop sign, the streetcar was more than 200 feet south of the point of collision, consequently the streetcar travelled in excess of 200 feet while Mrs. Hausherr was driving 28 feet. One witness described the collision as sounding like an "explosion", and it is uncontradicted that the automobile was carried 80 feet north before it became disengaged from the streetcar and that the front end of the streetcar came to a stop 113 feet north of the point of collision. Furthermore, defendant had erected a "slow" sign which was hanging from a cable over its north bound tracks and which was located a short distance south of the south curb line of 59th Street as a warning to its operators to approach and enter this intersection at a "slow" speed. The evidence also discloses that this intersection is heavily travelled by motor cars and that there are several business establishments immediately east of the intersection and on both sides of 59th Street and on the east side of Main Street.

From all these facts and surrounding circumstances, we believe the evidence was sufficient to submit the issue of excessive speed. In Vol. 10, Blashfield on Automobile Law, § 6560, page 340, it is said: "Although the evidence may be entirely circumstantial as to the rate of speed at which an automobile was operated, it may be sufficient to support a reasonable conclusion reached by the jury on the issue of negligence. Circumstances connected with an accident may be sufficient to overcome direct evidence as to the speed of a motor vehicle. Direct testimony is not essential to warrant a finding of excessive speed, * * *". Then follows a long discussion of various facts, circumstances and conditions which will support an allegation of negligent speed. In Vol. 5, Am.Jur., § 630, page 851, it is said: "Various factors, such as skid marks, distance traveled after impact, force of impact, etc., are pertinent in arriving at an estimate of the rate of speed of an automobile." We announced substantially the same doctrine in Bear v. Devore, Mo.App., 177 S.W.2d 674. We think the same general rule would apply in determining whether a streetcar was operated at an excessive speed. We do not mean to hold that any one particular fact would prove speed, but rather that a series of facts and occurrences may be sufficient.

■ Defendant cites cases announcing the general principle that instructions must be supported by the evidence. That is unquestionably the law, but those cases are not applicable under the facts in this case.

■ Defendant also contends that Instruction No. 1 is erroneous because it permits the jury to find that Mrs. Hausherr "was exercising the highest degree of care in proceeding across defendant's tracks * * *", when her own testimony showed that she was guilty of contributory negligence as a matter of law. Without rehashing the evidence, we are unwilling to say that she was guilty of contributory negligence as a matter of law under the facts above detailed. She saw the streetcar more than 200 feet away; was familiar with the "slow" sign hanging above the tracts, and had every reason to believe that she could cross in safety if the streetcar was travelling at a reasonable speed and obeyed the "slow" warning sign. See Highfill v. Wells, Mo.Sup., 16 S.W.2d 100.

Defendant's last contention is that Instruction No. 1 is erroneous because it directed the jury that if it found that "defendant's streetcar collided with and against the said automobile driven by Mary Hausherr and injured her, then you are instructed to return a verdict for the plaintiff". The basis of this contention is that

438

one of the elements of damage to the plaintiff (the husband) is the loss of companionship, society and services of his wife by reason of defendant's negligence, and that Instruction No. 1 does not properly define that element of damage.

 It is well established that for the negligent injury of a married woman two independent rights of action exists, one for injury to the wife, which is personal to her, and the other for consequential injuries suffered by the husband on account of the loss of society, services, and expenses which he has been forced to suffer on account of the injuries to his wife; that the injury to the wife does not necessarily imply injury to the husband; that her injury is direct and the injury to the husband is indirect. It is apparent that this instruction omitted to require a finding that *plaintiff suffered loss and damages resulting from his wife's injuries*, an essential element of the husband's right to recover. It is also well settled that an instruction which omits an *essential element* of a plaintiff's right, and yet authorizes a verdict for plaintiff, constitutes *error.*

This identical question was fully discussed by the Supreme Court in Pandjiris v. Oliver Cadillac Co., 339 Mo. 726, 98 S.W.2d 978, and State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W.2d 788. The effect of the holding in those two cases is that a submission such as is contained in Instruction No. 1 is *technically erroneous.* Nevertheless, it may not be reversible error if there is no evidence refuting plaintiff's evidence relative to his damage from the loss of services and consortium due to his wife's injuries and if other instructions properly define his damages.

In the instant case, plaintiff's Instruction No. 2, defining his elements of damage, told the jury that it might take into consideration the loss of services of his wife, if any, and the damage to his automobile, if any. On cross-examination, defendant elicited from Mrs. Hausherr that she had a suit pending to recover for her personal injuries. Based on this evidence, defendant's Instruction No. 4 told the jury that when a married woman receives personal injuries through the negligence of another, two causes of action arise,—one for the wife for her injuries and the other for the husband in his own favor for what he has actually lost and the expenses he has incurred on account of her injuries; that the present suit is by the husband and not by the wife; that her case must be independently tried upon its own merits, and this case must be tried upon its merits alone; and that her pain and suffering must be recovered in her suit and cannot be considered as an element of damage for which the husband can recover in his suit.

A very similar set of instructions were given in the Pandjiris case, supra, and held not to be reversible error. In State ex rel. Fourcade v. Shain, the court reviewed that and other cases, and said, 119 S.W.2d 789: "In other words, if the whole submission makes it clear to the jury that the husband is only entitled to recover for correctly stated elements of his own loss, and not for the damage his wife sustained from her injuries, and if there is no real issue as to whether the husband did sustain some loss, then it is not reversible error for the main instruction to omit a finding to that effect. * * * The measure of damages instruction does not cure this omission but it makes the whole submission correct so that the jury could not be misled or confused by requiring no finding of this uncontroverted element of plaintiff's recovery. This omission becomes immaterial in such a situation because the case then falls within the exception to the rule, stated in the Banc cases cited, as recognized and well stated in respondent's brief (and that is the effect of the ruling in the Pandjiris Case), namely: 'Where, by admissions in pleadings or admissions in the trial of a case, or by evidence which corroborates the evidence of the opposite party, or where by examination of witnesses it is unmistakably apparent that certain facts are conceded, then, of course, such facts are no longer at issue and should not be required to be submitted in an instruction.'"

On the authority of the last two cited cases on this point, we must hold that Instruction No. 1 was not *prejudicially erroneous* in failing to fully and completely define the elements of plaintiff's damages.

From what we have said, it follows that the court erred in sustaining the motion for new trial because of error in Instruction No. 1. Such order is reversed and the cause is remanded with directions to reinstate the verdict and judgment thereon as of the date originally entered.

All concur.