**Lawrence Leland FOSTER, Respondent,**

**v.**

**Mary Lucille SACCO, Appellant.**

**No. 23234.**

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Fred F. Wesner and Robert L. Wesner, Sedalia, for appellant.

Crouch & Fitzgerald, Warrensburg, for respondent.

MAUGHMER, Commissioner.

This lawsuit arose out of an automobile collision. The defendant Mary Lucille Sacco was the driver and owner of one car. The other was being operated by Raymona Joyce Foster. Mrs. Foster was killed outright. Her surviving husband Lawrence Leland Foster, as plaintiff, had a verdict and judgment in the sum of $15,000 for her alleged wrongful death. Defendant has appealed. She assigns as error the refusal of the trial court to sustain her motion for directed verdict (submitted at the close of plaintiff's case and again after all the evidence was in), and asserts the court also erred in giving plaintiff's Instruction No. 1

The accident occurred shortly after 9:30 a. m., December 2, 1958 and on an east-west gravel farm-to-market highway (Route V) in Johnson County, Missouri. With Mrs. Foster in a 1953 Ford, which was traveling toward the east, were her nine year old son and a neighbor's child, aged three years. Both Mrs. Foster and her son were killed at the time. The occupants of the Sacco 1950 Plymouth, which was proceeding westerly, were Mrs. Sacco, who received severe injuries, and a passenger, who was killed instantly. No other person saw the accident. Therefore, defendant is the only surviving eyewitness.

Mrs. Sacco, age 41 years, said the weather was cloudy; that she "was driving on my side of the road and just as we came to the crest of that hill this car appeared and she was coming right at me. I did my best to pull to the right * * *". "Q. What happened? A. That was all, she hit". It was defendant's testimony that she was well on her side of the road—"I would say one or two feet from the edge of the road". Mrs. Sacco had driven east

on this highway during the morning of the accident and had seen a ridge of gravel along the south side. She estimated her speed prior to the accident at between 25 and 30 miles per hour. She declared that when she saw the Foster car coming at her she pulled to the right and applied her brakes but did not believe she sounded the horn. Mrs. Sacco was the only witness called by defendant. Plaintiff, of course, is entitled to the benefit of any favorable evidence from the defense, but we find nothing in this testimony which shows liability on defendant's part for the accident.

■ To make his case and in an effort to establish liability factually, plaintiff relied chiefly upon the testimony of Dale Williams, a Deputy Sheriff, State Trooper Fred Barnes, and the physical facts. We shall review this evidence and for the purpose of passing upon the motion for directed verdict, accept it as true, giving plaintiff every reasonable inference that may be drawn therefrom and from a standpoint most favorable to plaintiff. Schoen v. Plaza Express Co. et al., 206 S.W.2d 536. However, plaintiff has the burden of presenting substantial evidence tending to prove facts essential to his recovery. Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467, 469. It is true that negligence may be sufficiently shown by circumstantial evidence but the circumstances must be such as reasonably follow, and resort may not be had to guesswork, conjecture and speculation. Hogue v. Wurdack et al., Mo.App., 298 S.W.2d 492, 498.

The road was 22 feet wide with no shoulder between the gravel and the ditch on either side. It had recently been "maintained" and the road grader had "pushed up" a ridge of gravel along the south side. The crest of this ridge was 4 feet north of the south edge of the road, approximately 6 inches high and about 12 inches wide at the base. It extended all along the road-

way and vehicles had not been crossing it. The weather was cloudy and dry but the surface was damp. According to all the evidence, including the highway patrol report and the photographic exhibits, the impact was between the left half of the fronts of both vehicles and head-on. The collision occurred 50 feet east of a sharp rise or hill.

Mrs. Everett Morris, housewife, residing near the scene, was in the yard and hanging her washing on the line. She heard the crash, but did not see the collision. She called an ambulance, but made no measurements or distance approximations. Although there was a curve, a person topping the hill could see about one-fourth of a mile to the east. Because the fronts of the two cars were so enmeshed, a fire truck was called to disentangle them. In this process the Foster car was pulled backwards about 6 feet. No one, including the officers, observed or were able to find any "skid marks" near the scene of the accident, such as would be made if brakes had been strongly applied, or if either car had slipped or been pushed sidewise. There was no evidence as to accumulation of debris as is usually found under colliding automobiles near the point of impact.

The Sacco car was equipped on its rear wheels with suburbanite or snow tires. The officers found tire marks made by tires similiar to those on defendant's car, commencing approximately 30 feet behind (east) of where the car came to rest "running parallel with the road approximately 4 feet and 1 inch from the north edge of the roadway—these tracks led up or partially up to the rear of the Sacco car, but were broken". Trooper Barnes said: "I found some tracks on the roadway at a point about 30 feet east of the scene of the accident. I found two tracks. I checked the pattern of the tracks and I checked the pattern on the tires on the rear of the Sacco car and I observed the number of bars on the tires and the number of

imprints of bars on the tracks and I found a like number of imprints on the tracks to the number of bars on the tires on the rear of the Sacco car. These tracks could not be traced solid, however they were sighted and were going in the direction of the scene of the accident". He said these tracks ended near the Sacco car. No tracks were found back of the Foster automobile, which were identifiable with it or which showed its location and course of travel at any time prior to the collision. The location of the Sacco car tire marks were estimated by the Deputy Sheriff, but were measured by Trooper Barnes. His measurements located the right track 4 feet 1 inch from the north edge of the road, and the left track 12 feet, 6 inches from the extreme south edge of the roadway—making it some 8½ feet north of the gravel ridge crest. When Trooper Barnes arrived, the Foster car had already been moved (6 feet west) but he measured the locations as then existing. The right front wheel of the Foster car was 7 feet from the extreme south edge of the roadway and was, therefore, 3 feet north of the gravel ridge crest. At this time Trooper Barnes found the right front wheel of the Sacco car 2 feet, 6 inches from the north edge of the roadway—this car was headed slightly southwest so the front wheel was a little farther from the north edge than was the right rear wheel. Trooper Barnes did not recall exactly how far back of the Sacco car at rest he measured its tire marks and found them to be 4 feet south of the north edge of the roadway. The auxiliary firemen merely aided in pulling the cars apart. They made no measurements or estimates as to distances or locations of the automobiles. Mr. Warneke, auto dealer, testifying from a national automobile guide book, gave the specific over-all width of the Foster Ford body as 6 feet, 2.3 inches and the Sacco Plymouth body as 6 feet, 1⅝ inches. There were no posted road signs indicating road repairs or suggesting caution.

Plaintiff's petition charged negligence in four respects: (a) failure to keep a lookout; (b) failure of defendant to exercise the highest degree of care to have her automobile under control; (c) failure to sound a warning; (d) failure to keep her automobile on the right-hand side of the highway and as near the right-hand side of the highway as practicable. However, plaintiff submitted only under (d) in part, that is, failure to drive on the right-hand side of the highway or the usable part thereof, so we shall consider if the evidence makes a submissible case on this ground.

Other than the testimony of Mrs. Sacco, we have no evidence whatever as to the speed or location on the highway of either car immediately before or at the time of the accident, except the physical facts as they appeared after the collision. So we have only circumstantial evidence which we must project backward as best we can and determine if such evidence, reasonably and substantially, justifies and supports the conclusions reached by the jury, which are inherent in its verdict, that defendant's negligence was the sole proximate cause of the collision and that plaintiff's decedent was not guilty of contributory negligence which caused or was a proximately contributing cause of the accident. If such conclusions are not substantially supported by the evidence, then the verdict could have been arrived at only by resort to guesswork, speculation and conjecture.

The evidence is that defendant's car was not moved after it came to rest following the collision. Its right front wheel was then 2½ feet south of the north edge of the gravel. Its right rear wheel was even closer to the roadside. This vehicle's over-all width was 6 feet, 1⅝ inches. Its body projects some 6 inches beyond the wheel on either side. Therefore, this car was then occupying approximately the north 8 feet of the 22 foot roadway—the north 17½ feet of which could reasonably be traveled. This occupancy was not only less than one-half of the total road, but

less than one-half of the usable portion. After it had been pulled back 6 feet, the Foster car's right front wheel was 7 feet from the extreme south side of the roadway, 3 feet north of the gravel crest and 2½ feet north of the gravel ridge base. Allowing for the body overhang over the wheel, the northernmost part of the Foster car was 12⅔ feet north of the south side of the road and 8⅔ feet north of the gravel ridge. But if these positions had actually been the locations when the cars met they would have passed with more than one foot to spare. Based upon these positions after the collision, we think no submissible case was made.

That brings us to the evidence relative to the location of defendant's automobile immediately before the collision. Probably the evidence authorizes a jury finding that defendant's right wheel immediately before the accident and for a distance of 30 feet east was approximately 4 feet, 1 inch south of the north edge of the gravel. This being so, then allowing a 6 inch fender overhang and considering the over-all width of defendant's car, we find that the southernmost part of its body was approximately 9⅔ feet from the north edge of the gravel and, therefore, 7⅔ feet north of the south edge of the traveled part of the roadway, or about 1 foot south of the imaginary center line. If plaintiff's decedent had put her right wheels next to the gravel ridge base she would have missed defendant's car by at least 2 feet. Is this evidence of defendant's failure to drive on the right-hand side sufficient to justify submission of the case and does it, considered in connection with the physical facts, make the driver of the Foster car guilty of contributory negligence?

The Statute, Section 304.015, V.A.M.S. (Laws, 1953, p. 587) provides: "Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except * * *". (We are not concerned here with the exceptions). The law requiring driving as close to the right-hand side of the highway as practicable was repealed August 29, 1953. Lewis v. Nelson, 8 Cir., 277 F.2d 207, 208. However, as stated in McGuire v. Steel Transp. Co., Inc., 359 Mo. 1179, 225 S.W. 2d 699, 702: "These rules of the road do not confer absolute rights, but impose reciprocal duties which may be qualified by the circumstances".

Giving plaintiff every reasonable inference which may be drawn from his evidence, would place the Sacco vehicle 1 foot over the center line and leave a clearance of almost 8 feet. Therefore, if Mrs. Foster had stayed on the right-hand side and driven to the very center, the left 12 inches of the two cars would have struck. Plaintiff's evidence and all the evidence shows the cars struck not with a glancing blow, but head-on between the left front halves of the vehicles. This would mean there was an overlap of about three feet at the time of the impact. If we put defendant's car where plaintiff claims it was and where plaintiff's evidence shows it was, namely, 12 inches south of center, then Mrs. Foster's car must have been two feet north of the center line at the time of impact.

In Justice v. Malin, Mo., 336 S.W. 2d 77, there was a 22 foot gravel road with a 4 foot gravel windrow on one side, leaving 18 feet available for travel. Defendant at a point 200 yards from the collision, was on his left side. He continued there until 50 yards from the place of impact when he veered to the right and "measurements of the positions of the cars at the point of collision showed that the left wheels of defendant's car were 9½ feet from the west edge of the traveled portion of the highway * * *" (at page 78). With the body overhang this would place this defendant about one foot left of the center line. Plaintiff's theory was that his decedent saw defendant on the wrong side and turned left to escape. The jury found for plaintiff. The trial court set aside the verdict and entered judgment

for defendant. The Supreme Court affirmed and said at page 80: "Even though defendant was guilty of neglience per se in not having the left wheels of his automobile completely on his right (west) side of the highway at the time he came to the crest of the hill on which the collision occurred, yet the evidence does not show with any degree of reasonable certainty that the collision would have occurred had plaintiff's decedent continued on his right (east) side of the road. In order to so find, the jury would have to infer that decedent, traveling on his right (east) side of the highway, would have driven so closely to the center of the traveled roadway as to come into contact with the slight portion of defendant's car extending to the east of the center thereof; the evidence showed that decedent still had eight feet of clearance on his right side". In this case many of the facts are similar to our case. In neither case were there eyewitnesses. Each gravel road was 22 feet wide, which was narrowed on plaintiff's side by some four feet. In the Justice case defendant, from a point 200 yards away until within 50 yards from impact, was subtantially over on the left side. He then veered to the right and when the collision occurred his left wheel was six inches left of center—the left part of his car body was therefore about one foot over. In our case plaintiff's evidence places defendant's car one foot left of center at point of impact and for a distance of 30 feet before. In both cases the physical facts show that each plaintiff was to the left of center at the time of collision. Under Section 304.015, supra, and under the decisions it is negligence per se to drive to the left of center. It is negligence for either a plaintiff or defendant to do so.

Plaintiff has invited our attention to numerous cases which we have read. We shall comment as to two of them. In Lyon v. Southard, Mo., 323 S.W.2d 785, 787, the charge of negligence was excessive speed. There were no eyewitnesses so the truth had to be gleaned from the physical facts. On this speed issue defendant's car left skid marks a distance of 258 feet and hit the parked car with sufficient force to throw it 33 feet. From such evidence it was held that a trier of the facts might well infer excessive speed. We certainly agree.

In Thompson v. Jenkins, Mo., 330 S.W. 2d 802, again there were no eyewitnesses. However, the debris indicated the collision occurred on plaintiff's side of the highway, and that her car had been struck not head-on, but a glancing blow on the side. A directed verdict for defendant was overturned. The court held this evidence made a submissible case as to whether defendant's deceased was negligently operating his automobile on the wrong side of the road.

We have read the evidence and have considered it long and carefully. We are unable to reach any sure or satisfying understanding as to just how this accident happened. There was no proof of skid marks made by either car, which we would expect to find if either driver saw the other car, apprehended danger and applied brakes. Likewise all the evidence (plaintiff's evidence) shows a head-on collision—no indication of a last second turning—which would be the automatic reaction of a driver cognizant of an impending collision.

We have no difficulty in concluding that each driver knew or in the exercise of the highest degree of care should have known that only that part of the road north of the gravel ridge was usable and that it was negligence per se for either to drive to the left of center of the remaining 17½ feet. We have some doubt if there is substantial evidence that defendant's car was over the center line at the time of impact. This doubt arises first because when the vehicles came to rest, defendant's car was on her side of the usable portion of the highway, and there were no skid marks or other evidence indicating it had been pushed northward. It comes secondarily because defendant's rear tire tracks located first 30 feet back were traceable only intermittently and were not traced directly to the

point of impact which leaves at least a possibility that defendant had driven entirely over to her right side when the collision occurred.

 However, we shall resolve the doubt on this question in favor of plaintiff, hold there is substantial evidence that defendant was over the line, and put defendant's car at the time of the accident exactly where plaintiff's evidence shows that it was, that is, 12 inches to the left of center. The undisputed physical facts—again proved by plaintiff—show that the left front halves of the two cars struck head-on. The officers so testified. The photographic exhibits so show. If, therefore, defendant's car was one foot over the line and the left front 3 feet of the vehicles struck, then when the collision took place the left front side of the Foster automobile was 2 feet left of the center line of the usable portion of the highway, thereby convicting plaintiff's deceased of contributory negligence, and causing plaintiff's lawsuit, carrying as it does the burden of proof, to fail because under such facts it cannot be said that defendant's negligence was the sole cause of the collision.

We believe and hold that defendant's motion for directed verdict should have been sustained. It is therefore unnecessary to consider the numerous assignments of error pertaining to plaintiff's main instruction. In the light of the views herein expressed, it would appear that plaintiff cannot make a submissible case under these facts, and no useful purpose would be served in remanding the case.

Therefore the judgment for plaintiff is reversed with directions to enter a judgment for defendant Sacco.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.