Orien GREENWOOD, Plaintiff-Appellant,

v.

Jack Anthony VANARSDALL, Defendant-Respondent.

No. 8023.

Springfield Court of Appeals.

Missouri.

April 3, 1962.

**110**

---◆---

J. W. Grossenheider, Lebanon, for plaintiff-appellant.

Baker, Brandom, Saeger & McElligott, Lawrence W. Saeger, Edmond J. McElligott, Kansas City, for defendant-respondent.

RUARK, Presiding Judge.

This is an appeal from an order granting a new trial after plaintiff's verdict.

Plaintiff's cause of action was based upon the proposition that the defendant drove at a high and dangerous rate of speed at night, down a hill, and around a curve, thereby causing *the defendant's car* to go over and into the ditch at the side of the road; that people congregated at such location; that this created a hazardous situation; that later the car in which plaintiff was riding came along; that the driver of plaintiff's car, in order to avoid striking people gathered on the road, ran *it* off the road and into a culvert, thereby causing plaintiff's injuries.

The incident occurred on Missouri State Highway 32 in Laclede County about seven miles from Lebanon.[1] The road was 21 feet wide, paved with blacktop. The pavement was dry. Approaching the scene from the east, some distance, perhaps a quarter-mile east, "You come over a hillcrest and then the road straightens out. For that matter, it's straight at that point and had' been for some time. It goes down to somewhat of a dip, then over another little hillcrest down this dip where the accident occurred, and down a curve to the left at the same time." We are unable to say from the record how steep or gradual the slope is.

1. We take those facts most favorable to the plaintiff plus those admitted by him.

coming off "another little hillcrest," nor how wide, sweeping, or abrupt the curve.

At any rate, about midnight defendant, in his car, with passengers (the number we do not know), came from the east over the hillcrest, down this dip and curve, went off the road and turned upside down in the ditch on the north side. There is no evidence as to what, if any, damage was suffered by defendant's car. There was no apparent injury to the defendant or his passengers. *However,* his car left two skid marks commencing somewhere up the road to the east, apparently near the crest of the rise. One mark was a short one, but the other one, presumably from one of the left tires, continued down the right edge of the blacktop for a distance of 123 yards to a point where (presumably) the car ran into an abutment of a culvert and turned over in the ditch. The state highway trooper said he talked to defendant afterwards and that there was an odor of alcohol on his breath but that he observed no "impairment" in the defendant. This we believe completes what the record shows of defendant's participation in the incident.

Now to plaintiff's participation: In the late afternoon he went uptown, in Lebanon, in search of his companion of the night before, located him at a tavern, and, after spending some time (unknown) there, went "riding around" in plaintiff's car. Eventually plaintiff and the companion stopped at a tavern on Highway 32, where they got some gas and drank the proverbial two bottles of beer. Then they proceeded on west toward the scene of the accident, the companion driving, plaintiff dozing beside him in the front seat. At about 1:00 a. m., or approximately 55 minutes after defendant's accident, they came over the crest of the hill at a speed which was 70 mph or 50–55 mph, depending upon which of plaintiff's witnesses is to be considered most favorable. At that time the state trooper's car, with a revolving red turret light, was parked on to the west of defendant's car in a driveway. Also parked *somewhere near,* "down quite a ways," but not on the pavement, were two or three other cars. The state trooper and four or five other men, perhaps more, were "kinda stringing up the road" east of the defendant's upended car. The state trooper was checking the skid marks left by defendant's car. He and at least one other man had a flashlight. They saw the lights of plaintiff's car come over the far rise, go down out of sight in the dip, then come over the last one. Those with flashlights waved them and then, without ceremony, scrambled across the ditch. Plaintiff's companion driver says that when he came over the crest of the hill he first saw the patrol car "dome light" (at 300–320 yards), then when his lights shone down he saw three persons "right in the middle of my lane" and not over 75 feet away. "I seen these three boys in the road and I hit my brakes and cut her to the left—hit my brakes hard—it went into a skid with me." He did this because, "Well, I'd had to hit them [the boys] before I coulda got stopped." In his skid, plaintiff swerved to the right off the edge of the pavement, then to the left side, and finally over an embankment, where he struck a culvert with considerable force and went into the ditch. The skid marks of plaintiff's car on the highway extended 110 yards. In such collision, plaintiff's car was sufficiently demolished that he "junked it out, salvaged it," and plaintiff received serious injuries.[2]

On such testimony the jury returned a verdict for plaintiff in the amount of $5425. Thereafter defendant filed a motion for judgment notwithstanding verdict and, in the alternative, a motion for new trial. The trial court overruled the motion for judgment but sustained the motion for new trial on two grounds, (a) the evidence was insufficient to support plaintiff's main instruction, which submitted the fact that defendant drove at a high and dangerous rate of speed, and (b) the evidence was

---

**2.** Defendant did not testify. The evidence showed him to be a soldier but did not show where he was stationed at the time of trial.

insufficient to support submissions as to defendant's negligence having been the proximate cause of plaintiff's injuries. The plaintiff has appealed; the defendant has not.

We find no record which shows that respondent pleaded or attempted to plead contributory negligence.

*Was there sufficient evidence to make a submissible case on the question of whether defendant negligently drove at a high and dangerous rate of speed?* Our conclusion is in the negative.

■ Excessive speed depends upon the circumstances existing at the time and place of the incident. Steele v. Goosen, Mo., 329 S.W.2d 703, 711; Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118. It is frequently stated that skid marks alone and in and of themselves are not usually proof of negligence,[3] (although one may envision a situation where skid marks alone would be mute testimony to a very high rate of speed); for, it is said, the mere skidding of an automobile is as consistent with care as with negligence. Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 876; Neely v. Freeze, 240 Mo.App. 1001, 225 S.W.2d 144, 154. Negligence is never to be presumed (Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78, 82; White v. Barkovitz, Mo.App., 254 S.W.2d 291, 294), but all cases hold that excessive speed may be proved by circumstances, and the skidding, when combined with surrounding circumstances, may be sufficient to justify the inference of a high and dangerous rate of speed. Russell v. Kotsch, Mo., 336 S.W. 2d 405, 409; Hausherr v. Kansas City Public Service Co., Mo.App., 268 S.W.2d 433, 437; Lyon v. Southard, Mo., 323 S.W.2d 785, 787; Bear v. Devore, Mo.App., 176 S.W.2d 862, 864, 177 S.W.2d 674, 676;

Evans v. Colombo, Mo.App., 311 S.W.2d 141, 144; Mo., 319 S.W.2d 549, 551.

Appellant points to the length of defendant's skid marks, in combination with the lay of the road, that is, the crest of the slope and the curve below it. As to the length of one skid mark we have definite evidence (123 yards). But it is worthy of note that, although one skid mark (apparently just after the defendant came over the crest) was short, the other (the long one) continued down the right edge of the pavement to the place where defendant's car was found. What inference is to be drawn from that? Did defendant attempt to apply the brakes as he started down the curving slope? If he did, was it because he was driving too fast? Or was it because, driving at a normal speed, he was confronted with the curving slope and desired simply to reduce his speed? Or did he have a deflated tire or a blowout? And was he trying to reduce his speed gradually? Or was it because of some traffic condition—another car? Or what? Did the brake on one wheel lock and the others run freely? Or was some other mechanical failure responsible? Which of these is so probable that it reasonably excludes all others? What would *one* skid mark, going downhill on a curve, point to and establish with reasonable certainty as the speed at the beginning point? "You pay your money and take your choice," and everyone is entitled to his own guess; but we cannot permit a man to be guessed into liability.

■ In order that negligence may be inferred from the circumstances, the evidence must be such as to exclude guesswork, speculation, and conjecture. Brawley v. Esterly, Mo., 267 S.W.2d 655, 659; Berry v. Harmon, Mo., 323 S.W.2d 691, 695; Ruby v. Clark, 357 Mo. 318, 208 S.W.2d

3. Story v. People's Motorbus Co. of St. Louis, 327 Mo. 719, 37 S.W.2d 898, 900; Quadlander v. Kansas City Public Service Co., 240 Mo.App. 1134, 224 S.W.2d 396, 399; Bear v. Devore, Mo.App., 176

S.W.2d 862, 864, 177 S.W.2d 674, 676; see Rodefeld v. St. Louis Public Service Co., Mo., 275 S.W.2d 256, 258; Gooch v. Avsco, Incorporated, Mo., 337 S.W.2d 245, 249.

251, 254. And to remove the case from the realm of speculation the circumstances must be such that the party having the burden of proof has facts which give more than an equal basis for one of two or more inconsistent conclusions. Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670; Riley v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 666, 670; Helton v. Huckeba, supra, 276 S.W.2d 78, 82. The conclusion reached must be the one which is "more reasonable and probable" (Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, 100), "reasonably follow[s]" (Foster v. Sacco, Mo.App., 343 S.W.2d 171, 173), and "reasonably eliminate[s]" the probability of any other source or cause. Miller v. Sabinske, Mo.App., 322 S.W.2d 941, 946.

■ Plaintiff makes some comparison between his car, which skidded 110 yards down the same grade, and defendant's car, which skidded 123 yards. The plaintiff's car was a 1953 Olds "in perfect condition." There is no evidence of the age or condition of defendant's car. Plaintiff was going either 50–55 mph (according to the driver) or 70 mph (according to the trooper). Plaintiff's car did not end its skid by virtue of its own braking power. It ended it by striking a culvert with such force as to practically demolish the car and inflict serious injuries on the plaintiff. There is no evidence of damage to defendant's car except that it was overturned in the ditch. Apparently none of the occupants was injured. It would require too much space to discuss all the cases cited by the appellant. We do not disagree with them; we think the facts distinguish them.

The second proposition is, assuming the defendant was driving at a high and dangerous rate of speed, *was this the proximate cause of plaintiff's injury?*

Appellant says so, but we are unable to follow his chain of circumstances to the ultimate end. We will not essay any definition of "proximate cause," "remote cause," or "efficient intervening cause." There are many.[4] Some of them state the rule in different language and with different emphasis. No one definition can become completely all-encompassing without becoming so involved as to destroy its usefulness. It is to be observed, however, that throughout all of the definitions run the requirements of "natural and probable result," "unbroken chain of circumstances," "continuous sequence," and "continuous whole," and that the words "foreseeability" and sometimes "comparative influence on the result" dodge in and out, depending upon whether they are handy tools for expressing the view of the court in respect to a particular state of facts.

■ In almost all questions of submissibility (which is usually a question of degree) the courts must of necessity first prejudge the facts to the extent that we determine whether the factual array is sufficient to be presented to the jury, just as a chef must sniff and taste the dish to see if it is proper to serve to the guest. In so doing we necessarily pay attention to definitions and the circumscriptions made by the law; and if we are unable to conform and fit all of them together and to the facts at hand, and if all else fails, we can always fall back on what we hope is common sense.

■ When plaintiff received his injuries, whatever the defendant did or failed to do was done and finished. Fifty-five minutes had passed since the defendant's car had gone into the ditch. The dust had long settled and the reverberations had long since ceased. *That* particular chain of cir-

---

4. See 38 Am.Jur., Negligence, § 50, p. 695, et seq.; 65 C.J.S. Negligence § 103, p. 645, et seq.; Restatement of the Law of Torts, 1948 Supp., §§ 430 through 442; Duke v. Missouri Pacific Railroad Co., Mo., 303 S.W.2d 613, 617; Dicker-

son v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, 824; Thebeau v. Thebeau, Mo., 324 S.W.2d 674, 678; Seeley v. Hutchison, Mo., 315 S.W.2d 821, 826; Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78.

cumstances had ended. Defendant's car was not blocking the road or shoulder. So far as the evidence shows, neither defendant nor any of his passengers was present. There was no emergency at hand and no rescue operation in effect. The persons who were present on the road were nowise directly concerned with the first occurrence. Their presence was not even a part of the *res gestæ* of the act of defendant in his driving, and their presence on the road in front of the plaintiff was a remote and intervening occurrence which in turn immediately precipitated the action of the plaintiff's driver in going off the road.

If we understand appellant's contention, it is (as the patrolman testified) that curious persons are liable to congregate at any wreck; and, although he denies the need of foreseeability, appellant charges defendant with the responsibility for any injuries which may result as a consequence of such gathering of people. In other words, if we follow the reasoning, and we are not sure we do, the defendant is to be held liable on some sort of theory which might be designated as negligently creating an attractive nuisance for adults.[5] Thus plaintiff carries the sequence and the causation on and on until the defendant, in letting his car overturn in the ditch, becomes a modern Phaethon, who, in letting his (father's) sunchariot run off the track, became responsible for all the following happenings on the earth, including the Ethiopians' turning black and the tear-born poplar trees along the River Eridanus.

We suppose that, given sufficient information, imagination, and stratospheric reasoning, by omitting any attention to the boundaries which the courts and treatises attempt to set by using the words "proximate," "natural and probable consequence," "unbroken chain of circumstances," "efficient intervening cause," and "remote," the wrongs which any of us may do can be traced in the ultimate causal connection with injury to a great many others, even those yet unborn; but the law, although a great moral force in itself, does not permit the recovery of damages except for those injuries which have an immediate affinity with actions which produce the wrong.

Appellant refers us to no case, foreign or domestic, which has a factual situation like the case at hand. Two Missouri cases are cited, viz., McGhee v. Jones, Mo., 336 S.W.2d 722, and La Plant v. E. I. Du Pont De Nemours & Co., Mo.App., 346 S.W.2d 231. The La Plant case (l. c. 244) simply contains a well-documented statement of causal connection not in conflict with anything we have said. We find no comfort to the appellant in the language of the McGhee case.[6]

The action of the court in sustaining the motion for new trial was not erroneous and should be affirmed. We think that what we have said indicates that the court would have been justified in sustaining defendant's motion for judgment; but defendant has not appealed, and we are not disposed to voluntarily and of our own motion convict of error by reversing that holding. The cause is remanded with directions to proceed in a manner not inconsistent with this opinion. It is so ordered.

McDOWELL and STONE, JJ., concur.

---

5. Although the driver of plaintiff's car referred to the "boys" on the road in front of him, there is no evidence of any children's being present at this 1:00 a. m. occurrence.

6. A factual situation somewhat similar (but not as "far out") is found in Kukacka v. Rock, 154 Or. 542, 61 P.2d 297, 1 N.C.C.A.,N.S., 191. In that case it was held that the intervening incidents, not the original negligence, were the proximate cause.