**Edward PHILLIPS, Plaintiff-Appellant,**

v.

**James CARROLL, d/b/a Schilli Tire Service, Defendant-Respondent.**

No. 32480.

St. Louis Court of Appeals.

Missouri.

March 21, 1967.

See also Mo.App., 379 S.W.2d 143.

William L. Pannell, Festus, R. C. Reis, St. Louis, for plaintiff-appellant.

Charles A. Weber, Ste. Genevieve, Lusser, Hughes & Lusser, Rene J. Lusser, St. Louis, for defendant-respondent.

ANDERSON, Presiding Judge.

This is an action for damages for personal injuries alleged to have been sustained by plaintiff, Edward Phillips, as a result of defendant's negligence. The trial below resulted in a verdict and judgment for plaintiff in the sum of $3,000.00. Thereafter, defendant filed a motion for judgment in accordance with his motion for a directed verdict. This motion was sustained by the trial court and a judgment was entered for defendant. From this judgment, plaintiff has appealed.

Plaintiff, at the time he was injured, was employed by St. Mary's Truck Line as a mechanic. On that day (July 11, 1949) it was discovered that one of the trailers belonging to said truck line had a flat tire. Thereupon, plaintiff drove a tractor to defendant's place of business to pick up a replacement for the flat tire. Defendant, James Carroll, who carried on business as Schilli Tire Service, did recapping and tire repair work for St. Mary's. On the day in question, plaintiff picked up a tire mounted on a rim which had been previously delivered to defendant. The tire was inflated. Plaintiff did not remember whether the tire was new, or one that had been recapped. Plaintiff, with the help of one of defendant's employees, loaded the tire on one of the tractor saddle tanks located on the rear of the tractor behind the cab. According to plaintiff's testimony, the tire

weighed every bit of one hundred pounds and was bulky and hard to handle. The saddle tank was about 40 inches above the ground. Plaintiff did not test the air pressure in the tire at the time, and did not know what the pressure was. Plaintiff did not secure the tire in any way after it was loaded onto the saddle tank. Defendant's place of business was three blocks from St. Mary's yard. Plaintiff drove this three blocks at a slow speed without stopping. When he arrived at the St. Mary's yard, he proceeded to remove the tire from the saddle tank. No one helped him. When he started to remove the tire, it was lying flat on the saddle tank. Plaintiff pulled the tire toward him and began lowering it over the rounded part of the saddle tank toward the ground. The rim assembly was toward his body and the tire against his body. When the tire was about a foot from the ground, it exploded. At that time, plaintiff had his arms around the tire and his face and body against it and the tire rim. The rim flew out striking plaintiff in the chest and face. As a result, his chest was bruised; the left side of his face bruised; and his jaw fractured.

In mounting a tire the following procedure is employed. The tube is placed in the tire, and then placed over the main rim. A retaining rim is then put in place and a lock rim placed under the lip on the main rim. The tire is held on the rim by the lock rim and the pressure of the tire. The lock rim is put in place by prying with a tire tool, and seated with the use of a hammer.

As the tire is inflated, the seating process is continued until it is tight. Plaintiff testified that it is necessary to tap or hammer the lock rim in place as the tire is being inflated, and for that reason, they do take quite a beating; that they do get knicks as a result. He further testified a little knick could let the rim blow off.

Russ Bauman testified for plaintiff. He testified that he was in the tire business at Crystal City, Missouri; that he had been engaged in the tire business for twelve years; that at least half of his business was in connection with truck tires or truck rims; and that he had had experience in dealing with rims such as those involved in this case.

The witness gave the following testimony:

"Q. Now, based again on your experience in the tire business, would you tell us what would cause a rim to explode off of a tire, or this type of equipment?

"A. Well, frankly, any rim or any compressed air, any tire mounted on any rim is dangerous and all precautions must be taken. * * *.

"Q. Well, what would cause a rim to explode off of an inflated tire?

"A. There could be numerous things. The lock rim could be bent or sprung and at the time you are airing this tire you must exert a certain amount of pressure on a sprung rim to get it to slide into the slot on the rim to see that the rim is seated properly. Now, if you have a bent rim there are times where it is almost impossible to get that lock rim to seat and you take chances in some of those cases.

\*    \*    \*    \*    \*    \*

"Q. Well, could a person experienced in the tire business discover the condition which you have testified to of a bent or sprung rim at the time the tire was mounted?

"A. I feel that you could see, you could possibly see in airing the tire if * * * the rim was bent or not. * * * If a rim is sprung you can see if it's sprung.

"Q. Well, Mr. Bauman, am I correct from your testimony that what would cause a rim to explode off of there would be the fact that the rim was improperly seated?

"A. That's right.

\*    \*    \*    \*    \*    \*

"Q. Mr. Bauman, if the retaining rim is properly seated, is there any way that the tire can come off and the rim explode off of the wheel?

"A. If the retaining rim is properly seated?

"Q. Properly seated, yes, sir.

"A. No, I don't think there would—In a case such as that I don't think there would be a way it could come off.

"Q. * * * If that retaining rim is properly seated can it be so determined by visual inspection?

"A. Yes, I'd say it can."

At the close of all the evidence, defendant filed a motion for a directed verdict. The grounds of said motion were that plaintiff had failed to prove defendant guilty of actionable negligence, and that under the facts plaintiff was shown to be guilty of contributory negligence as a matter of law. This motion was by the Court overruled.

Plaintiff submitted his case by Instruction No. 2, which Instruction reads as follows:

"Your verdict must be for the plaintiff if you believe:

"First, defendant repaired the truck tire, and

"Second, the truck tire had been improperly repaired and mounted and the retaining rim was improperly seated, and was thereby dangerous to person using it in the manner and for the purpose intended in the vicinity of its probably (sic) use while it was being used in the manner and for the purpose intended, and

"Third, defendant knew or by using ordinary care could have known of the dangerous condition, and

"Fourth, the plaintiff did not know and by using ordinary care could not have known of the dangerous condition, and

"Fifth, defendant failed to warn plaintiff of such dangerous condition, and

"Sixth, defendant was thereby negligent, and

"Seventh, while the truck tire was being used in the manner and for the purpose intended, plaintiff was damaged as a direct result of such dangerous condition."

Appellant assigns as error the action of the trial court in setting aside the verdict and judgment, and in entering judgment for defendant. In support of this assignment, it is urged that there was substantial evidence that plaintiff's injuries were due to the negligence of defendant in improperly mounting the tire in that the retaining rim was not properly seated, and in failing to warn plaintiff of this condition which was dangerous and could have been ascertained by visual inspection.

There was no direct evidence that the rim in question was not properly seated or that it was bent or sprung at the time the tire was mounted on the main rim by the defendant. To prove this fact and defendant's responsibility therefor, plaintiff relied on circumstantial evidence and the testimony of Russ Bauman. The facts and circumstances relied upon by plaintiff are: (1) that defendant did most of the tire repair work for St. Mary's; (2) that several days prior to the day in question, defendant picked up some rims at the St. Mary's yard; (3) that plaintiff picked up the tire at defendant's place of business; (4) that the tire was inflated at the time it was picked up; (5) that an employee of defendant assisted plaintiff in placing the tire on the tractor saddle tank; and (6) the tire exploded when it was being removed by plaintiff from the tractor saddle tank. The testimony of Russ Bauman was in substance that there were numerous things that could cause such a rim to explode off of an inflated tire; that the lock rim could be bent or sprung making it almost impossible to get the rim properly seated which

condition would cause the rim to explode; and that he felt this condition could possibly be seen by a person experienced in the tire business when inflating the tire. He further testified that if the retaining rim was properly seated, "I don't think there would be a way it could come off."

The burden of proof was on plaintiff to prove that defendant was guilty of the negligence submitted and that said negligence was the proximate cause of plaintiff's injuries. The proof of these elements of his case may be made by circumstantial evidence and opinion evidence where appropriate, but the evidence relied on must be such that the facts necessary to a verdict must reasonably follow without resort to guesswork, speculation and conjecture. Lindsay v. Wille, Mo., 348 S.W.2d 1; Greenwood v. Vanarsdall, Mo.App., 356 S.W.2d 109; Foster v. Sacco, Mo.App., 343 S.W.2d 171; Vietmeier v. Voss, Mo., 246 S.W.2d 785.

In our judgment, the evidence in this case did not meet the standards set out in the above cited cases. The testimony of witness, Bauman, was not sufficient to establish a defect in the rim for the reason that it was not based upon a reasonable degree of certainty. After testifying that there were numerous things that could cause the rim in question to explode off of the wheel, he said he did not think the rim could come off if the rim was properly seated. In our opinion, this testimony was not of sufficient probative value as to amount to substantial evidence of improper seating of the rim. Armstrong v. Croy, Mo.App., 176 S.W.2d 852. In this state of the record, there was no substantial evidence to support the required findings under plaintiff's Instruction No. 2. It did not point with reasonable certainty to the negligence submitted. Grissom v. Handley, Mo.App., 410 S.W.2d 681.

The judgment is affirmed.

RUDDY, and WOLFE, JJ., concur.